## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| YOLANDA GILL, | |
| Plaintiff, | Case No. 19-cv-08099 |
| v. | Judge Manish S. Shah |
| CEC EMPLOYEE GROUP, LLC, | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS PARTS OF PLAINTIFF'S COMPLAINT

Defendant CEC Employee Group, LLC ("Defendant" or "CEC"), by and through its attorneys, Kirsten A. Milton and Brenna R. McLean of Jackson Lewis P.C., moves to dismiss, in part, Plaintiff Yolanda Gill's ("Plaintiff" or "Gill") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). CEC relies upon the following Memorandum of Law in Support of its Motion to Dismiss Parts of Plaintiff's Complaint (the "Motion").[1]

---

[1] Consistent with Rule 12(a)(4) of the Federal Rules of Civil Procedure, Defendant also requests that the Court allow Defendant to respond to the remainder of the Complaint not subject to the current Motion following a ruling on the Motion. *See Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 U.S. Dist. LEXIS 75032, at *17-18 (N.D. Ill. May 28, 2013) (citing 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1346 (3d ed.)) ("The weight of authority is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion."); *see also Oil Express Nat., Inc. v. D'Alessandro*, 173 F.R.D. 219 (N.D. Ill. 1997) (extending time to answer counts not addressed in motion to dismiss for 10 days after the court's ruling on the counts challenged in the 12(b)(6) motion); *Compton v. City of Harrodsburg, Ky.*, 287 F.R.D. 401, 402 (E.D. Ky. 2012) (granting motion to extend time to file answer where defendants filed partial motion to dismiss, finding that "requiring parties to file responsive pleading in a piecemeal fashion would undoubtedly create duplicative sets of pleadings…and would cause confusion") (quotations omitted); *Talbot v. Sentinel Ins. Co., Ltd.*, N. 2:11-cv-01766-KJD-CWH, 2012 U.S. Dist. LEXIS 43340, at *11 (D. Nev. Mar. 29, 2012) (collecting cases and agreeing with the "majority of courts that have held that a pending motion to dismiss, although it may only address some of the claims alleged, tolls the time to respond to all claims under Rule 12(a)(4)").

## INTRODUCTION

In her Complaint, Plaintiff, a current CEC employee, asserts a number of factually and legally flawed claims related to her employment at CEC. Specifically, in Counts I and II, Plaintiff alleges that CEC discriminated against her based on her race, African American and Native American, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII") (Count I) and the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* ("IHRA") (Count II). In Count III, she alleges she has been, and continues to be, subjected to sexual harassment in violation of Title VII. In Counts IV and V, she claims she was retaliated against in violation of the federal Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b)(8)-(9) ("WPA") (Count IV) and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") (Count V). Finally, in Count VI, she asserts a claim for various forms of injunctive relief. As discussed in more detail below, Counts I and II should be dismissed in part, and Counts III – V should be dismissed in whole, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Counts I and II should be dismissed in part because Plaintiff failed to exhaust her administrative remedies with respect to her claims that she was discriminated against because she is Native American. It is axiomatic that Gill can assert in her Complaint only those Title VII claims that were brought before the U.S. Equal Employment Opportunity Commission ("EEOC"). But, in her EEOC Charge of Discrimination ("Charge"), Plaintiff alleged only race discrimination based upon her identification as African American, and retaliation for engaging in alleged protected activity, not discrimination based on her identification as a Native American. Thus, she cannot now bring claims for race discrimination based on her Native American ethnicity. *Worthington v. JJ Severson Affiliates, Inc.*, No. 16 C 8573, 2017 U.S. Dist. LEXIS 9419 (N.D. Ill. Jan. 24, 2017)

(plaintiff prohibited from asserting race discrimination claim when EEOC charge never alleged national origin discrimination based on Native American origin).

Similarly, Plaintiff's claim of sexual harassment (Count III) must be dismissed in whole because she failed to raise a claim of sexual harassment in her Charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996) (affirming dismissal of plaintiff's sexual harassment claim where her EEOC charge had only contained allegations of discrimination based on sex).

Count I-II and IV-V must be dismissed because Plaintiff has failed to plead facts sufficient to state a plausible claim for race discrimination based on her Native American ethnicity and retaliation under the federal WPA or FMLA. First, Plaintiff's Complaint is devoid of *any* facts to support a claim for discrimination based on her Native American origin and thus, must be dismissed. Second, there can be no dispute that the federal WPA applies only to federal employees. Because Plaintiff is not a federal employee, nor does she allege she is one, Count IV must be dismissed. *See* 5 U.S.C. § 2302; *Wills v. Grundy County*, No. 07 C 5257, 2008 U.S. Dist. LEXIS 51387, at *12 (N.D. Ill. June 26, 2008).

Finally, Count V likewise must be dismissed. In support of Count V, Plaintiff alleges that CEC retaliated against her for taking FMLA leave by "barr[ing] access" to her workload for "two (2) workdays" upon her return to work following her FMLA leave. (Compl. ¶¶78-80, ¶83). She claims CEC's actions "caused [her] workload to suffer . . . [by] detract[ing] from Plaintiff's ability to produce the 'goal' and/or target number and percentage of daily dials essential to the functions of Plaintiff's job." *Id*. But, such actions do not constitute "materially adverse" actions sufficient to give rise to an FMLA retaliation claim and therefore, must be dismissed. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 n. 35 (7th Cir. 2015).

3

For these reasons and the additional reasons set forth below, Defendant respectfully requests that the Court grant its Motion and dismiss Counts I-II in part and Counts III-V in their entirety with prejudice.

## RELEVANT FACTUAL ALLEGATIONS[2]

According to the Complaint, Plaintiff began working for Defendant in or about November 2017 as a National Admissions Advisor. (Compl. ¶16, 17). On November 1, 2019, Plaintiff was promoted to Senior National Admissions Advisor, the position she holds to this day. (*Id*. ¶35).

On August 8, 2018, Plaintiff filed her Charge with the EEOC and cross-filed with the Illinois Department of Human Rights ("IDHR"). (*See* Ex. A).[3] Under the "Discrimination Based On" section of her Charge, Plaintiff checked the boxes for "Race" and "Retaliation," claiming that CEC discriminated against her based on her race (African American) and retaliated against her for reporting the alleged discrimination. The basis of Plaintiff's claims stemmed from an incident on or about April 18, 2018, when, according to Plaintiff, "one of Respondent's managers sent an email to Complainant and other admissions advisors . . . . advis[ing] . . . [them] that they should not use 'slang' or 'Ebonics', by which Respondent meant African American slang, when communicating with students or potential students." *Id*. "On April 19, 2018, Complainant complained to Respondent about this racial statement and the failure of any managers or directors at the meeting to properly address this racist statement at the time" and CEC investigated the matter. *Id*. During that same investigation, Complainant also claimed that, based on her credentials, she should have been

---

[2]    For purposes of this Motion only, Defendant accepts as true the allegations set forth in the Complaint. Defendant denies and disputes Plaintiff's allegations for all other reasons.  Defendant reserves the right to dispute Plaintiff's allegations in the event that the Motion is not granted.

[3]    In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations in the Complaint, as well as documents that are referenced in the Complaint. *See Titus v. Ill. DOT*, 828 F.Supp.2d 957, 929, n.6 (N.D. Ill. 2011) (citing Fed. R. Civ. P. 10(c)). If, based on the facts pleaded and judicially noticed, an affirmative defense is evident, then dismissal under Rule 12(b)(6) is proper.

4

hired at a more senior level, and, in fact, shortly thereafter, requested, but did not receive, a pay raise. In her Charge, Plaintiff also alleged that, during this investigation, she alleged that CEC discriminatorily applied its pay and promotion policies based on an individual's race, favoring Caucasians over African Americans. *Id*.

Finally, in her Charge, Plaintiff claimed that, in response to the above-described actions, CEC retaliated against her by "limit[ing] the number and quality of phone calls from potential student applicants," calling her "to the office on a frequent basis and making various inaccurate claims against her." *Id*.

On September 11, 2019, the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue. (*See* Ex. B). The Notice informed Plaintiff that, within 90 days of receipt, she could "file a lawsuit against the respondent(s) under federal law *based on this charge* in federal or state court." *Id*. (emphasis added).

On December 11, 2019, Plaintiff initiated the instant lawsuit against CEC, alleging claims of race discrimination under Title VII and the IHRA, sexual harassment in violation of Title VII, and retaliation under the federal WPA and FMLA. *See* Dkt. No. 1. With respect to her race discrimination claims, Plaintiff alleges CEC discriminated against her based on "race as a person of African American and Native American descent" and "ethnicity." (Compl. ¶¶3, 86, 94).

Regarding her claim under the federal WPA, Plaintiff alleges that "Plaintiff is a protected person within the meaning of the Whistleblower Protection Act of 1989" and "defendant receives federal monies and grants which it utilizes to run and operate the resources it provides to consumers." (*Id*. ¶¶115, 116).

In support of her FMLA retaliation claim, Plaintiff alleges that CEC retaliated against her for taking FMLA leave by "barr[ing] access" to her workload for "two (2) workdays" upon her

return to work following her FMLA leave, which "caused [her] workload to suffer . . . [by] detract[ing] from Plaintiff's ability to produce the 'goal' and/or target number and percentage of daily dials essential to the functions of Plaintiff's job." (*Id.* ¶¶78-80, 83).

## ARGUMENT

I.     **Counts I And II Should Be Dismissed In Part And Counts III – V Should Be Dismissed In Whole For Failure To State A Claim Upon Which Relief Can Be Granted.**

A court should grant a motion to dismiss pursuant to Rule 12(b)(6) where a complaint does not allege facts that, accepted as true, state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim should be dismissed where, accepting all well-pleaded factual allegations in the light most favorable to the plaintiff, the complaint nevertheless fails to "plausibly suggest that the plaintiff has a right to relief." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A complaint that offers "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further actual enhancement" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 808 (7th Cir. 2010) (holding that failure to allege facts in support of a substantive element of a claim is grounds for dismissal under Rule 12(b)(6)). In other words, although "legal conclusions can provide the framework of a complaint, they must be supported by the factual allegations." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

   A.     **Counts I and II Should be Dismissed in Part Because Plaintiff has Failed to Plead any Facts Sufficient to State a Claim for Discrimination based on Her Native American Ethnicity.**

In Counts I and II, Plaintiff has failed to plead *any* facts, much less facts sufficient to state a plausible claim for discrimination based on her Native American origin. Not once in her 137-

6

paragraph Complaint does Plaintiff get around to pleading a single fact that could plausibly demonstrate how or why she believes she has been discriminated against because she is Native American. Instead, all she asserts is that she was discriminated against based on her "race as a person of . . . Native American descent," "is and was always . . . [a] Native American woman employed by the defendant," and "was a protected person under the statute of the IHRA, due to her race and ethnicity as . . . [a] Native American woman." (Compl. ¶¶3, 86, 94). As the U.S. Supreme Court has made clear, such "naked assertions devoid of further factual development" fail to state a claim upon which relief may be granted" and must be dismissed. *Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."); *see also Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) (courts "are not bound to accept as true a legal conclusion couched as factual allegation").

### B. Count IV Should be Dismissed Because Plaintiff has Not Stated a Claim for Relief Under the Federal Whistleblower Protection Act Because She Fails to Allege that She is a Federal Employee.

It is axiomatic that the federal WPA applies only to federal employees. *See* 5 U.S.C. § 2302; *Wills v. Grundy County*, No. 07 C 5257, 2008 U.S. Dist. LEXIS 51387, at *12 (N.D. Ill. June 26, 2008) (granting motion to dismiss where plaintiff failed to plead facts showing that she was a federal employee entitled to the protections of the WPA). Under the WPA, a federal employee is someone who is: (1) appointed by a federal official acting in her official capacity; (2) engaged in the performance of a federal function under the authority of law or an executive order; *and* (3) under the supervision and direction of a federal official while engaged in the performance of the duties of her position. *See* 5 U.S.C. § 2105 (emphasis added). An individual "must meet all three qualifications of the statute and failure to meet one qualifications dooms her claim." *Wills*,

2008 U.S. Dist. LEXIS 51387 at *12. Here, Gill has not plead, nor can she meet, even one element to establish that she is a federal employee.

All that Plaintiff asserts is that she "is a protected person within the meaning of the Whistleblower Protection Act of 1989" and "defendant receives federal monies and grants which it utilizes to run and operate the resources it provides to consumers." (Compl. ¶¶ 115, 116). Because she does not allege *any* of the three necessary elements to be a "federal employee" protected by the WPA – nor can she because she is not a federal employee – Plaintiff has failed to state a claim for relief under the WPA and the Court should dismiss Count IV of her Complaint. *See Young v. Dart*, No. 14-cv-06350, 2015 U.S. Dist. LEXIS 165937 (N.D. Ill. Dec. 10, 2015) (dismissing plaintiff's claim under the WPA because she was not a federal employee); *Scholl v. Chicago Reg'l Council of Carpenters*, No. 12 C 1806, 2013 U.S. Dist. LEXIS 16374 (N.D. Ill. Feb. 6, 2013) (holding that the WPA only applies to federal employees).

**C.     Count V Should Be Dismissed Because Plaintiff Fails to Allege Facts Sufficient to Establish that She Suffered a Materially Adverse Action for Taking FMLA Leave.**

Plaintiff's claim for FMLA retaliation (Count V) is equally deficient. To establish an FMLA retaliation claim, Gill must plead facts that show "(1) a statutorily . . . protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Cardenas v. First Midwest Bank*, 114 F. Supp. 3d 585, 594 (N.D. Ill. 2015) (internal citations omitted). A "materially adverse" action includes any actions that would dissuade a reasonable employee from exercising her rights under the FMLA. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 n. 35 (7th Cir. 2015) ("The critical question is whether the employer's actions would discourage a reasonable employee from taking FMLA leave."); *see also, Burlington*

*Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). In her Complaint, Plaintiff claims that CEC retaliated against her for taking FMLA leave by "barr[ing] access" to her workload for "two (2) workdays" upon her return to work following her FMLA leave. (Compl. ¶¶78-80, 83).[4] Plaintiff alleges that CEC's actions "caused [her] workload to suffer . . . [by] detract[ing] from Plaintiff's ability to produce the 'goal' and/or target number and percentage of daily dials essential to the functions of Plaintiff's job." (Compl. ¶81). However, Plaintiff does not allege that the delay actually caused *any* negative impact on her numbers or that she suffered any materially adverse action as a result of the temporary technological delay – such as "hiring, firing, failing to promote, reassignment . . . or a decision causing a significant change in benefits" – as she must to survive a motion to dismiss. *See Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (noting that the Seventh Circuit has "consistently required that the adverse action giving rise to an FMLA retaliation claim be 'materially adverse.'"). While Plaintiff may have been slightly inconvenienced by this minor delay upon her return to work, she has not alleged that she suffered any "materially adverse" action as a consequence, and therefore has failed to state a claim of FMLA retaliation. *Id.* ("[t]he decision to take FMLA leave cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience"); *see also Trahanas v. Northwestern Univ.*, No. 15-CV-11192, 2017 U.S. Dist. LEXIS

---

[4]  Supporting her allegation that CEC blocked access to her workload until February 13, 2019, Plaintiff cites to Exhibit 13. (Compl. ¶82). However, Exhibit 13 is completely ineligible and therefore does not support this allegation. Nonetheless, CEC assumes Plaintiff's allegations are true for the purposes of this Motion.

104098, at *17 (N.D. Ill. Jul. 6, 2017) (noting that getting locked out of one's work computer after going on leave is "likely a minimal inconvenience" rather than an adverse action).

## II. Counts I, II, And III Should Be Dismissed, In Part Or In Whole, Because Plaintiff Failed To Exhaust Her Administrative Remedies.

Before a plaintiff may assert a Title VII claim in court, she must exhaust the congressionally-mandated administrative procedure before the EEOC. 42 U.S.C. 2000e-5; *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Title VII exhaustion requirement is strictly applied, and courts in this Circuit routinely dismiss claims of discrimination where, as here, it is not satisfied. *See, e.g.*, *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989); *Huri v. Circuit Court of Cook County*, No. 11 C 3675, 2012 WL 1431268, at *3 (N.D. Ill. Apr. 25, 2012); *Fleming v. United Parcel Serv.*, No. 03 9391, 2004 WL 2314962, at *2 (N.D. Ill. Oct. 12, 2004).

### A. The Court Should Dismiss Counts I and II of Plaintiff's Complaint for Alleged Race Discrimination Based on Her Native American Origin Because They are Outside the Scope of Her Charge.

Even if Gill had sufficiently plead a claim for discrimination based on her Native American ethnicity, Counts I and II should still be dismissed in part because it is well established that a plaintiff may not pursue in a lawsuit a Title VII claim that was not raised in the preceding EEOC charge.[5] *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985) ("[T]he requirement that the scope of the EEOC charge limit the scope of the

---

[5]     In analyzing discrimination claims under the IHRA, Illinois courts apply the same framework used by federal courts in addressing discrimination claims under Title VII. *Blackford v. Fed. Express Corp.*, 80 F. Supp. 3d 809, 817 (N.D. Ill. 2015); *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (1989) (noting that courts use the same analytical framework to analyze Title VII and IHRA claims).

subsequent complaint is in the nature of a condition precedent with which litigants must comply...”); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (citations omitted) (“[A] plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC.”); *see Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (internal citations omitted) (explaining that exhaustion is a condition precedent to bringing a claim under Title VII because the scope of subsequent litigation is limited by the nature of the charge filed at the administrative level); *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). Accordingly, a plaintiff may only bring claims that were included in the EEOC charge “or that are ‘like or reasonably related to the allegations of the charge and growing out of such allegations.” *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995). Such a requirement ensures that the employer has notice of the particular conduct and “an opportunity to attempt conciliation without resort to the courts.” *Rush*, 966 F.2d at 1110.

In Counts I and II of her Complaint, Plaintiff alleges, in part, that she was subjected to race discrimination because she is Native American. (Compl. ¶¶3, 86, 94). Yet, nowhere in her Charge does Plaintiff allege that CEC discriminated against her based upon her Native American origin. Instead, in her Charge, Plaintiff only identifies as “African American.” (*See* Ex. A). The *sole bases* for Plaintiff’s Charge stem from Plaintiff’s allegations of race discrimination based on an incident regarding “Ebonics and African American slang” and alleged disparate treatment between African American and Caucasian employees. *Id*. In fact, no fewer than 13 times throughout her Charge, Plaintiff referenced “African Americans,” but not once makes reference to Native Americans. *Id*.

Because Plaintiff’s Charge alleged only race discrimination and retaliation based upon her race as an “African American,” she has not exhausted her administrative remedies and Counts I and II based on “Native American” race discrimination should be dismissed. In *Worthington v. JJ*

11

*Severson Affiliates, Inc.*, No. 16 C 8573, 2017 U.S. Dist. LEXIS 9419 (N.D. Ill. Jan. 24, 2017), the plaintiff, like Gill, failed to check the box for "national origin" discrimination, but, unlike Gill, specifically stated the he "believe[d] that [he was] discriminated against because of [his] race, Native American . . . ." Significantly, the Court concluded that such a statement was not sufficient to put the defendant on notice of claims of national origin discrimination and dismissed his claim for failure to exhaust his administrative remedies. *Id.* at *7; *see also Otero v. City of Chicago*, 833 F. Supp. 2d 829, 831 (N.D. Ill. 2011) (dismissing the plaintiff's national origin claim because she failed to allege national origin discrimination in her EEOC charge and "made no allegation whatsoever that would support or imply such a claim").

Plaintiff's race discrimination claim based on her identification as Native American is also not reasonably related to any allegations she made in her Charge. Plaintiff's Native American claim is one based on "ethnicity." (Compl. ¶¶86, 94). Discrimination based on national origin, not race, "involves treating people (applicants or employees) unfavorably because they are from a particular country or part of the world, because of ethnicity or accent, or because they appear to be of a certain ethnic background (even if they are not)." https://www.eeoc.gov/laws/types/nationalorigin.cfm. Such a claim is an independent cause of action, distinct from a claim of racial discrimination, and courts in this Circuit have routinely dismissed plaintiffs' claims for national origin discrimination as not "reasonably related" to their race discrimination claims. *Worthington*, 2017 U.S. Dist. LEXIS 9419 at *7 (finding that the plaintiff did not show "that the . . . national origin discrimination claim[] [is] reasonably related to his race discrimination claim, which is an entirely separate and distinct for of discrimination"); *Rodgers v. Arlington Heights Sch. Dist. No. 25*, 171 F. Supp. 2d 773, 776 (N.D. Ill. 2001) (finding that plaintiff's national origin claim was not reason-

ably related to his EEOC charge where plaintiff's charge stated: "I believe that I have been discriminated against on the basis of my race, Black . . . ."). Because Gill cannot show that her claim for discrimination based on her Native American ethnicity "could have been reasonably expected to grow out of an EEOC investigation of the alleged race discrimination" related to being African American, Counts I and II should be dismissed in part. *Worthington*, 2017 U.S. Dist. LEXIS 9419 at *7.

**B.    Count III of Plaintiff's Complaint Should be Dismissed Because Plaintiff Did Not Allege any Claims of Sexual Harassment in her Charge.**

The Court should also dismiss Count III of Plaintiff's Complaint in whole because she did not allege in her Charge that she was sexually harassed during her employment at CEC. (*See* Ex. A.). Wholly absent from her Charge are any references to sex whatsoever. Further, since the allegations of sexual harassment in Plaintiff's Complaint implicate new individuals and reference new conduct, they are entirely unrelated to the allegations contained in her Charge. Indeed, the Seventh Circuit and other courts in this Circuit have repeatedly concluded that allegations of discrimination in a charge are not reasonably related or sufficient to put a defendant on notice of claims of harassment (even, unlike the instant case, when the alleged harassment and discrimination were based on the same protected characteristic). *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996) (affirming dismissal of plaintiff's sexual harassment claim where her EEOC charge had only contained allegations of discrimination based on sex); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111-12 (7th Cir. 1992) (affirming district court's dismissal of racial harassment claim where the EEOC charge alleged only race discrimination); *Hall v. Walsh Constr. Co.*, No. 11 CV 08706, 2012 U.S. Dist. LEXIS 112111, at *16 (Aug. 9, 2012) (dismissing plaintiff's race-based termination claim because it was "not like or reasonably related to" a racial harassment claim"); *Huri v. Circuit Court of Cook County*, No. 11 C 3675, 2012 WL 1431268, at *3

13

(N.D. Ill. Apr. 25, 2012) (dismissing hostile work environment harassment claim where EEOC charge alleged discrimination and made only "limited references" to harassment). Accordingly, Count III should be dismissed in its entirety because Plaintiff has not exhausted her administrative remedies.

## **CONCLUSION**

For all of the foregoing reasons, CEC respectfully requests that the Court dismiss Count I-V of Plaintiff's Complaint in part or in whole in accordance with Rule 12(b)(6) and allow Defendant to respond to the remainder of the Complaint upon the Court's ruling on this Motion.

Dated: January 31, 2020                                  Respectfully submitted,

**CEC Employee Group, LLC**

By: /s/ Kirsten A. Milton
        One of Its Attorneys

Kirsten A. Milton
Brenna R. McLean
JACKSON LEWIS P.C.
150 N. Michigan Ave., Suite 2500
Chicago, Illinois 60601
(312) 787-4949
Kirsten.Milton@jacksonlewis.com
Brenna.McLean@jacksonlewis.com

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on January 31, 2020, she caused a true and correct copy of the foregoing ***Defendant's Memorandum of Law in Support of Its Motion to Dismiss Parts of Plaintiff's Complaint*** to be filed with the Court by electronic filing protocols, and therefore electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s/ Kirsten A. Milton

# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | 440-2018-07351 |
| XX | EEOC | |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* | |
|---|---|---|
| Ms. Yolanda Gill | (773) 703-0202 | |
| STREET ADDRESS 786 Inland Circle, #302 | CITY, STATE AND ZIP CODE Naperville, IL 60563 | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME CEC EMPLOYEE GROUP, LLC | NUMBER OF EMPLOYEES, MEMBERS 15 + | TELEPHONE *(Include Area Code)* (847) 781-3600 | |
|---|---|---|---|
| STREET ADDRESS 231 North Martingale Road | CITY, STATE AND ZIP CODE Schaumburg, IL 60173 | | COUNTY |
| NAME | | TELEPHONE NUMBER *(Include Area Code)* | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | COUNTY |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| [XX] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] AGE |
|---|---|---|---|---|
| [XX] RETALIATION | [ ] NATIONAL ORIGIN | [ ] DISABILITY | [ ] OTHER *(Specify)* | |

DATE DISCRIMINATION TOOK PLACE
*EARLIEST (ADEA/EPA)*     *LATEST (ALL)*

April 18, 2018     June 14, 2018

[XX] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**\* \* \* S E E  A T T A C H E D \* \* \***

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I delcare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Date 8/6/18    *Charging Party (Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 8/6/18 |

OFFICIAL SEAL
SHANITA STEVENS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/08/22

EEOC FORM 5 (Test 10/94)

**CHARGE OF DISCRIMINATION**

*Yolanda Gill and CEC Employee Group, LLC*

The Particulars Are:

I.      Complainant was hired by Respondent in or about November 2017 as an Admissions Advisor I. Respondent is a for profit educational institution.

II.     Complainant has met Respondent's reasonable performance expectations at all times relevant to this charge.

III.    On or about April 18, 2018, one of Respondent's managers sent an email to Complainant and other admission advisors who were on her Masters team regarding an upcoming training session. This email advised Complainant and other Admission Advisors that they should not use "slang" or Ebonics", by which Respondent meant African American slang, when communicating with students or potential students.

IV.     When Complainant attended the training meeting later that day on April 18, the manager reiterated this same point about not using Ebonics, meaning African American slang, when communicating with students or potential students.

V.      Many of the admissions advisors who attended this meeting were African American. Neither Complainant nor the other African American advisors used Ebonics or African American slang when conducting any business related activities or when communicating with students or potential students.

VI.     There were other directors at the April 18, 2018 meeting and who received this same April 18, 2018 email. No one from Respondent took any action nor addressed the improper reference of using Ebonics to African American employees.

VII.    Respondent's email and comments which assumed that Complainant and the other African American employees used African American slang or Ebonics at work was racially offensive to Complainant and the African American admission advisors at this meeting and who received the email.

VIII.   On April 19, 2018, Complainant complained to Respondent about this racial statement and the failure of any managers or directors at the meeting to properly address this racist statement at the time.

IX.     In response, Respondent admitted that the manager and others involved in training had either not received any diversity training or had not received any in "quite some time."

X.      Shortly after the April 18, 2018 racist statement was made, Complainant learned that a less qualified Caucasian employee with no prior experience in admissions was hired by

Respondent as level 2 Admissions Advisor and paid approximately $10,000 more in salary. Complainant and other African American employees had more experienced and Complainant had a Masters degree, yet were only hired as level 1 advisors and paid less.

XI.  On or about April 23, 2018, Complainant met with a senior manager with Respondent's Employee Relations department and discussed the following issues:

a.  The racist email about ebonics,
b.  The fact that several African American admission advisors were paid less and hired at a lower level than Caucasian employees, despite having equal or greater qualifications and experience than the Caucasian employees, and
c.  That fewer African American advisors were being promoted as compared to Caucasian Advisors.

XII.  Complainant asked Respondent for a raise in April and in May 2018 explaining that she should have been hired initially as a Level II advisor based on her superior qualifications and MBA, as compared to the Caucasian employee, and that she had been performing higher level work beyond what a Level I advisor normally did.

XIII.  On or about May 10, 2018, in response to Complainant's complaints, Respondent told her that she should leave if she was not happy working for Respondent.

XIV.  In a phone call with Employee Relations on or about May 15, 2018, Complainant asked about a Level II Admissions Advisor position based on her superior qualifications and performance in comparison to Caucasian employees who were hired as an Admission Advisor II though they were not as qualified as Complainant. Respondent told her she should wait 6 months before seeking the higher level position for which she was already more than qualified.

XV.  Beginning in May 2018, Respondent began to retaliate against Complainant for making complaints of discrimination and these actions have continued to the present.

XVI.  Respondent began to limit the number and quality of phone calls from potential student applicants which it referred to Complainant in order to adversely affect her performance.

XVII.  On or about June 14, 2018, Respondent told Complainant that there was no evidence to support her claim that she should have been paid more or hired at a higher level. During this same conversation, Respondent accused her of being disruptive to other employees when she spoke about unfair treatment by Respondent. After making this accusation, Respondent offered her a voluntary separation agreement, told her she had 5 days to sign, but refused to provide her with a copy the agreement to take with her.

XVIII.  The Complainant discussed unfair treatment with other African American employees who also told Complainant about unfair treatment and these discussions were always done discreetly. Complainant was warned about speaking to any other employees about unfair or

discriminatory treatment at work.

XIX. Respondent began calling Complainant to the office on a frequent basis and made various inaccurate claims against her. As other employees saw how Respondent was treating Complainant, they began to distance themselves from her out of fear that they might suffer similar retaliation.

# EXHIBIT
# B

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Yolanda Gill**<br>**c/o Arthur Ehrlich, Esq.**<br>**Law Offices Of Goldman, & Ehrlich, Chtd.**<br>**20 S. Clark St., Suite 500**<br>**Chicago, IL 60603** | From: **Chicago District Office**<br>**230 S. Dearborn**<br>**Suite 1866**<br>**Chicago, IL 60604** |

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2018-07351** | **Zachary M. Florent,**<br>**Investigator** | **(312) 872-9742** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*     9-11-19

Enclosures(s)

**Julianne Bowman,**          (Date Mailed)
**District Director**

cc:  **CEC EMPLOYEE GROUP, LLC**
**c/o Kirsten A. Milton, Esq.**
**Jackson Lewis P.C.**
**150 N. Michigan Ave., Suite 2500**
**Chicago, IL 60601**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| XX | EEOC | 440-2018- 07351 |

ILLINOIS DEPARTMENT OF HUMAN RIGHTS and EEOC

*State or local Agency, if any*

| NAME*(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Yolanda Gill | (773) 703-0202 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 786 Inland Circle, #302 | Naperville, IL 60563 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| CEC EMPLOYEE GROUP, LLC | 15 + | (847) 781-3600 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 231 North Martingale Road | Schaumburg, IL 60173 | |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| | | |
|---|---|---|
| XX RACE | COLOR | SEX | RELIGION | AGE |
| XX RETALIATION | NATIONAL ORIGIN | DISABILITY | OTHER *(Specify)* |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)

April 18, 2018     June 14, 2018

XX CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

*** S E E   A T T A C H E D ***

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I delcare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date 8/6/18   Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)* 8/6/18 |

OFFICIAL SEAL
SHANITA STEVENS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/08/22

EEOC FORM 5 (Test 10/94)

**CHARGE OF DISCRIMINATION**

*Yolanda Gill and CEC Employee Group, LLC*

The Particulars Are:

I.      Complainant was hired by Respondent in or about November 2017 as an Admissions Advisor I. Respondent is a for profit educational institution.

II.     Complainant has met Respondent's reasonable performance expectations at all times relevant to this charge.

III.    On or about April 18, 2018, one of Respondent's managers sent an email to Complainant and other admission advisors who were on her Masters team regarding an upcoming training session. This email advised Complainant and other Admission Advisors that they should not use "slang" or Ebonics", by which Respondent meant African American slang, when communicating with students or potential students.

IV.    When Complainant attended the training meeting later that day on April 18, the manager reiterated this same point about not using Ebonics, meaning African American slang, when communicating with students or potential students.

V.     Many of the admissions advisors who attended this meeting were African American. Neither Complainant nor the other African American advisors used Ebonics or African American slang when conducting any business related activities or when communicating with students or potential students.

VI.    There were other directors at the April 18, 2018 meeting and who received this same April 18, 2018 email. No one from Respondent took any action nor addressed the improper reference of using Ebonics to African American employees.

VII.   Respondent's email and comments which assumed that Complainant and the other African American employees used African American slang or Ebonics at work was racially offensive to Complainant and the African American admission advisors at this meeting and who received the email.

VIII.  On April 19, 2018, Complainant complained to Respondent about this racial statement and the failure of any managers or directors at the meeting to properly address this racist statement at the time.

IX.    In response, Respondent admitted that the manager and others involved in training had either not received any diversity training or had not received any in "quite some time."

X.     Shortly after the April 18, 2018 racist statement was made, Complainant learned that a less qualified Caucasian employee with no prior experience in admissions was hired by

Respondent as level 2 Admissions Advisor and paid approximately $10,000 more in salary. Complainant and other African American employees had more experienced and Complainant had a Masters degree, yet were only hired as level 1 advisors and paid less.

XI.    On or about April 23, 2018, Complainant met with a senior manager with Respondent's Employee Relations department and discussed the following issues:

    a.    The racist email about ebonics,

    b.    The fact that several African American admission advisors were paid less and hired at a lower level than Caucasian employees, despite having equal or greater qualifications and experience than the Caucasian employees, and

    c.    That fewer African American advisors were being promoted as compared to Caucasian Advisors.

XII.    Complainant asked Respondent for a raise in April and in May 2018 explaining that she should have been hired initially as a Level II advisor based on her superior qualifications and MBA, as compared to the Caucasian employee, and that she had been performing higher level work beyond what a Level I advisor normally did.

XIII.    On or about May 10, 2018, in response to Complainant's complaints, Respondent told her that she should leave if she was not happy working for Respondent.

XIV.    In a phone call with Employee Relations on or about May 15, 2018, Complainant asked about a Level II Admissions Advisor position based on her superior qualifications and performance in comparison to Caucasian employees who were hired as an Admission Advisor II though they were not as qualified as Complainant. Respondent told her she should wait 6 months before seeking the higher level position for which she was already more than qualified.

XV.    Beginning in May 2018, Respondent began to retaliate against Complainant for making complaints of discrimination and these actions have continued to the present.

XVI.    Respondent began to limit the number and quality of phone calls from potential student applicants which it referred to Complainant in order to adversely affect her performance.

XVII.    On or about June 14, 2018, Respondent told Complainant that there was no evidence to support her claim that she should have been paid more or hired at a higher level. During this same conversation, Respondent accused her of being disruptive to other employees when she spoke about unfair treatment by Respondent. After making this accusation, Respondent offered her a voluntary separation agreement, told her she had 5 days to sign, but refused to provide her with a copy the agreement to take with her.

XVIII.    The Complainant discussed unfair treatment with other African American employees who also told Complainant about unfair treatment and these discussions were always done discreetly. Complainant was warned about speaking to any other employees about unfair or

discriminatory treatment at work.

XIX.  Respondent began calling Complainant to the office on a frequent basis and made various inaccurate claims against her.  As other employees saw how Respondent was treating Complainant, they began to distance themselves from her out of fear that they might suffer similar retaliation.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to Sylvia Bustos and either mailed to the address above, faxed to (312) 869-8220 or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *Be sure to include your name, address, phone number and EEOC charge number with your request.*

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

\*    Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or

\*    After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure before you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300. You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, it is recommended that you first review your file to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent in its entirety to the copy service, and you will be responsible for the cost. Payment must be made directly to Aloha Print Group, which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)