UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOLANDA S. GILL, <br><br> Plaintiff, <br><br> v. <br><br> CEC EMPLOYEE GROUP, LLC, <br><br> Defendant. | No. 19 CV 8099 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Yolanda Gill alleges race discrimination and sexual harassment against her employer, CEC Employee Group, LLC, under Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the Illinois Human Rights Act. She also claims CEC retaliated against her, in violation of the National Defense Authorization Act and Family and Medical Leave Act. CEC moves to dismiss the complaint and for the reasons discussed below, its motion is granted.

**I.      Legal Standard**

A complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). At the motion to dismiss stage, I accept the plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *Iqbal* at 678–79. I do not accept allegations that are unsupported, conclusory, or legal conclusions. *Id.* Factual allegations that aren't in the complaint are also disregarded. *See Pirelli Armstrong Tire Corp. Retiree*

*Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("a plaintiff may not amend [her] complaint in [her] response brief"). I may consider documents attached to the complaint and documents that are referenced in and central to its claims. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

## II.    Facts

CEC Employee Group, LLC, a business that services higher education institutions, hired Yolanda Gill as an admissions advisor, an entry-level position, to support its master's degree program. [23] ¶¶ 17–19; [31] at 7, n.2.[1] Gill, an African-American woman, held a bachelor's degree and a master's degree in business administration. [23] ¶¶ 3, 34. While hired to support the master's-degree team, Gill was quickly assigned to support doctoral candidates. [23] ¶ 20. Internally, doctoral advisors were viewed as more senior positions than advisors to undergraduate and master's-degree programs. [23] ¶ 23. Gill considered the position a promotion, even though her supervisor described it as a lateral move. [23] ¶ 22. About a month into her new job, Gill asked her supervisor about her position and a salary increase. [23] ¶ 21. Gill believed a white male, with the same education level but less experience, was hired as a senior admissions advisor and made $10,000 more than her. [23] ¶ 25. The following month, with no advance notice or explanation, the company moved Gill to advise master's-level students. [23] ¶¶ 24, 32. Gill considered this a demotion. [23] ¶ 32.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

A few months later, Gill's manager sent an email to a predominantly African-American group of employees about a training session on professionalism, which described the use of "slang" and "Ebonics" as non-professional. [23] ¶¶ 39–40. The use of the words "slang" and "Ebonics" insinuated that African Americans are substandard, uneducated, and unprofessional. [23] ¶¶ 41, 43, 44, 46–47. Teams with a different demographic makeup were not given this training. [23] ¶ 42. Gill reported her manager's conduct. [23] ¶ 48. About three weeks later, the company began an investigation. [23] ¶ 52. Gill's manager was terminated, but neither Gill nor her African-American colleagues were provided with information about the investigation or its conclusions. [23] ¶¶ 52–53.

Around the same time as the professionalism incident, one of Gill's male co-workers bought Gill lunch and said to her "everything I feed, I f**k." [23] ¶¶ 55, 58.[2] Gill reported the incident but instead was reprimanded for calling her colleague "a womanizer." [23] ¶ 59. The company also gave Gill a separation agreement. [23] ¶ 61. A company representative told her, "if you are so unhappy here, you can leave," but provided no other explanation. [23] ¶ 61. Gill decided to stay. *See id*. A few months later, the same male co-worker told Gill, "I know you have some singles left from your days on the pole." [23] ¶ 63.

---

[2] Gill generally alleges that since the start of her employment, she had experienced unwelcomed sexual advances from this colleague, which she reported to her supervisors, who were unresponsive. [23] ¶¶ 54, 56. At some point, this colleague was promoted from a senior admissions advisor to an admissions consultant. [23] ¶ 55.

3

Gill filed discrimination charges with the Equal Employment Opportunity Commission, indicating that she wanted her charges filed with both the EEOC and the Illinois Department of Human Rights. [23] ¶ 13; [31-1]. Gill marked the racial discrimination, retaliation, and continuing-action boxes in her EEOC charge. [23-1] at 1; [31-1].[3] The charge described incidents related to racial misconduct, including her manager's use of racially coded words and pay disparities between African-American and white employees. [31-1] at 3–5.

Two incidents happened the same month Gill filed her charge. A man, with less education and experience than Gill and at least one other African-American admissions advisor, was promoted to campus director of admissions. [23] ¶¶ 27–29.[4] And Gill's co-worker, who allegedly harassed her, physically blocked her pathway and grabbed and pulled her body. [23] ¶¶ 64–65. Gill called the company ethics hotline to report the incident. [23] ¶¶ 66, 68–69. The following month, CEC investigated Gill's sexual harassment claim and orally reported that her co-worker's conduct amounted to sexual harassment and/or misconduct. [23] ¶¶ 67–68. The company also wrote-up Gill for using profanity. [23] ¶ 68.

Months later, Gill requested and the company granted leave under the FMLA to care for her mother. [23] ¶¶ 74–75. When Gill returned to work, she was unable to

---

[3] Gill provided the first page of her EEOC charge, which references an attachment that Gill did not include. [23-1] at 1. CEC uploaded Gill's complete charge with the attachment. [31-1]. Gill does not dispute the document's accuracy, so I refer to CEC's version of Gill's EEOC charge.

[4] Gill generally alleges that lesser qualified white employees were promoted at higher rates than qualified African-American employees. [23] ¶ 37.

4

access her office for nearly two days, even though the company knew her return date. [23] ¶¶ 76–78. The delay prevented Gill from working and reaching certain daily call targets, which she alleges affected her future promotions and pay raises. [23] ¶ 80.

About two years after Gill was hired, CEC promoted Gill to senior admissions advisor in its master's-degree program. [23] ¶¶ 15, 35. Gill viewed the promotion as a lateral move because she used to work on the more prestigious doctoral team. [23] ¶ 36. The following month, Gill filed this lawsuit. [1]. An HR representative contacted Gill about her sexual harassment claims. [23] ¶ 83. Gill met with the representative and shared her claims in detail. [23] ¶¶ 86–93. A few months later, Gill met with the Lead Coordinator for Title IX. [23] ¶¶ 94–99. The coordinator indicated that Gill's claims fell within the scope of sexual harassment claims under Title IX, and said that her initial complaint was treated as workplace harassment and not sexual harassment. [23] ¶¶ 99–106. The coordinator told Gill to think about potential accommodations to ensure a safe environment. [23] ¶ 106.

Gill filed an amended complaint in response to CEC's first motion to dismiss. [20]; [22]; [23]. She alleges racial discrimination under Title VII and the IHRA, sexual harassment under Title VII and Title IX, and retaliation under the NDAA and FMLA. CEC filed a second motion to dismiss all of Gill's claims except her federal claim of racial discrimination. [30].

### III. Analysis

Count II of Gill's amended complaint seeks relief for racial discrimination under Illinois law. A party seeking judicial review of a civil-rights claim under the

5

IHRA must first exhaust her administrative remedies by filing a claim with the IDHR, proceeding with an investigation, and obtaining a final order from the department. *See Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 640 (7th Cir. 2004); 775 ILCS § 5/8-111(B)(1), (D). The requirement to exhaust all available remedies allows the IDHR to use its expertise to resolve the issue and conserves judicial resources. *See Castaneda v. Illinois Human Rights Com'n.*, 138 Ill.Dec. 270, 272 (Ill. 1989). Gill filed her discrimination charge with the EEOC, a federal agency. [31-1]. Charges filed with the EEOC are "deemed filed" with the IDHR. 775 ILCS § 5/7A-102(A-1)(1); 56 Ill. Admin. Code § 2520.490 (procedures for "EEOC Dual Filed Charges"). The EEOC and IDHR collaborate under a workshare agreement to the extent they share common jurisdiction and goals over discrimination claims. *See Carlson v. Christian Brothers Services*, 840 F.3d 466, 467 (7th Cir. 2016); U.S. EEOC, FY 2012 EEOC/FEPA Model Worksharing Agreement, http://www.eeoc.gov/employees/fepa_wsa_2012.cfm. If the EEOC is designated to investigate the charge first, like in Gill's case, [23] ¶ 13, the IDHR will not take action until the EEOC makes a determination. 775 ILCS § 5/7A-102(A-1)(1). The complainant must notify the IDHR of the EEOC's determination in order to receive a final order from the IDHR. 775 ILCS § 5/7A-102(A-1)(1)("the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complaint"). If the complainant fails to submit a copy of the EEOC's determination, the IDHR may dismiss the charge for lack of

6

jurisdiction. 56 Ill. Admin. Code § 2520.490(d).[5] These laws and regulations existed before, during, and after Gill's EEOC filing.[6] Gill does not allege that she notified the IDHR of the EEOC's right-to-sue notice or that she obtained a final order from the IDHR. Under the law, regulations, and workshare agreement at the time, there was no reason for Gill or her counsel to presume the EEOC's final determination (unlike an EEOC charge) would be automatically filed with the IDHR. *See* [35] at 8. Because it is obvious that Gill did not exhaust her administrative remedies under the IHRA, she cannot obtain judicial review of her state-law claim. *See Walker v. Thompson*, 288 F.3d 1005, 1009–10 (7th Cir. 2002) (administrative exhaustion need not be overcome at the pleading stage, unless the existence of a valid affirmative defense is so plain from the face of the complaint). Count II is dismissed without prejudice. *See Chaidez v. Ford Motor Company*, 937 F.3d 998, 1008 (7th Cir. 2019) (Although a plaintiff's claim may no longer be timely, "it is worthwhile to follow the proper course of dismissal without prejudice and leave any potential timeliness issue for the plaintiffs to work out.").

---

[5] The complainant may then request to have the Illinois Human Rights Commission review the IDHR's determination by filing a request for review with the commission within 90 days after receipt of the IDHR's notice of dismissal. 56 Ill. Admin. Code § 2520.490(d).

[6] *Compare* 775 ILCS § 5/7A-102 (effective September 8, 2017), *with* 775 ILCS § 5/7A-102 (effective June 8, 2018), *and* 775 ILCS § 5/7A-102 (effective August 24, 2018), *and* 775 ILCS § 5/7A-102 (effective January 1, 2020); *see also* 56 Ill. Admin. Code § 2520.490 (effective April 21, 2014). Even the template workshare agreement cited by Gill indicates that charges that are dually-filed are still subject to applicable federal, state, or local statutes. *See* Section II(E), U.S. EEOC, FY 2012 EEOC/FEPA Model Worksharing Agreement, http://www.eeoc.gov/employees/fepa_wsa_2012.cfm.

Gill must also exhaust her administrative remedies under federal law. *See id.* at 1004. Her claims under Title VII must be based directly on, or "like or reasonably related" to, what she alleged in her EEOC charge. *See id.* A plaintiff cannot allege new theories of liability in a complaint and bypass the EEOC's initial jurisdiction. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."). Similar to state law, the federal exhaustion requirement is important because it allows the EEOC to resolve disputes first and gives employers notice of the employee's allegations. *Chaidez*, 937 F.3d at 1004. Gill's EEOC charge only described race discrimination and retaliation. [31-1]. While Gill did not need to check the "sex" discrimination box, her charge only described the professionalism incident with her manager and pay disparities between African-American and white employees. [31-1] at 3–5. There were no allegations or inferences about sex- or gender-based discrimination. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (the details in an EEOC charge must adequately support a claim of sex discrimination). Furthermore, allegations of "retaliation" and a "continuing action" are not "like or reasonably related" to claims of sexual harassment. *See Cervantes v. Ardagh Group*, 914 F.3d 560, 565 (7th Cir. 2019) (a retaliation charge is not reasonably related to a discrimination claim). Gill's sexual harassment claim doesn't even involve the same people or events as her racial discrimination claim. *See id.* (a charge and complaint may be reasonably related if at minimum, they describe the

same circumstances and participants). Count III is dismissed without prejudice. *See Chaidez*, 937 F.3d at 1008.

Gill's sexual harassment claim under Title IX also fails. In this circuit, all employment-discrimination claims must be brought under Title VII. *Brown v. Illinois Department of Human Services*, 717 Fed.Appx. 623, 625–26 (7th Cir. 2018) (citing *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir. 1996), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009)). Gill's Title IX claim is based on the same facts as her workplace sexual harassment claim under Title VII and is therefore preempted. Count VI is dismissed with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (dismissal with prejudice is warranted where it is certain from the face of the complaint that amendment would be futile).

Gill also claims CEC retaliated against her for using the ethics hotline to report her male co-worker's misconduct, in violation of the NDAA. The NDAA protects employees of federal contractors who report the misuse of federal funds from retaliation. 41 U.S.C. § 4712(a)(1); *see also Delebreau v. Danforth*, 743 Fed.Appx. 43, 44 (7th Cir. 2018). A plaintiff must exhaust her administrative remedies by filing a complaint with the United States Inspector General before bringing a lawsuit. 41 U.S.C. § 4712(c)(2). Gill's complaint and response brief do not suggest that she ever complied with the statute's requirements. But putting that potential affirmative defense aside, Gill fails to state a claim for relief. The NDAA's retaliation protections only apply to employees that report evidence of gross mismanagement or abuse of a

federal contract or grant. 41 U.S.C. § 4712(a)(1). Gill does not plausibly allege the conduct she reported—her male co-worker's misconduct—was evidence of the misuse or mismanagement of a federal contract. Even Gill appears to concede the NDAA is inapplicable to her claim, citing a different legal authority—Executive Order 11,246, which prohibits federal contractors from discriminating against employees—in her response brief. *See* Exec. Order No. 11,246, 30 Fed. Reg. 12319 (Sept. 24, 1965). But this directive is also irrelevant. The executive order is enforced by the Office of Federal Contract Compliance Programs and does not create a private right of action. *See Hill v. Ross*, 183 F.3d 586, 589 (7th Cir. 1999); *see also Boyd v. Jacobs Project Management Company*, 740 Fed.Appx. 99, 101 (7th Cir. 2018). Count IV is dismissed with prejudice. *See Runnion*, 786 F.3d at 519.

Gill's final retaliation claim under the FMLA also fails. To state a claim, Gill must allege 1) she engaged in statutorily protected activity; 2) CEC subjected her to an adverse action; and 3) the protected activity caused the adverse action. *See Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). While taking leave under the FMLA is protected activity, *see id.*, Gill does not plausibly allege the second and third elements of her claim. A retaliatory adverse action is one that would have dissuaded a reasonable worker from engaging in the protected activity. *Freelain*, 888 F.3d at 901–02. While demotions or reduced opportunities for promotion are adverse actions, *see Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008), Gill's allegation that the lockout damaged her "longevity and eligibility" for future promotions and pay raises, [23] ¶ 80, is too conclusory and speculative to credit. *See*

10

*Iqbal*, 556 U.S. at 681 (bare assertions are not entitled to be assumed true). Gill alleges more specifics in her response brief, stating that she missed approximately 60 to 100 calls, which lowered her performance reviews. [35] at 13–14. Not only is this fact disregarded, *see Pirelli*, 631 F.3d at 448, but Gill still fails to allege a materially adverse action. *See Pierri v. Medline Industries, Inc.*, 970 F.3d 803, 807 (7th Cir. 2020) (negative evaluations, standing alone, do not constitute adverse employment actions). And although Gill alleges that the lockout happened immediately upon her return from FMLA leave, there is no allegation that CEC limited her access because of her FMLA leave or that it even considered her leave as a "negative factor" when taking any materially adverse actions. *See* 29 C.F.R. § 825.220(c)[7]; 29 U.S.C. § 2615(a)(2); *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) (discussing the causation standard for FMLA retaliation claims).

When a party repeatedly fails to cure deficiencies, a claim may be dismissed with prejudice. *See Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004). With this warning in mind, Gill gets one more chance to bring her claim. "Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *See Runnion*, 786 F.3d at 520 (internal citation and quotation omitted). While the facts in Gill's response may be insufficient to state a claim, that doesn't mean there are no facts she could plead. If Gill can plead

---

[7] Regulations issued by the United States Department of Labor are subject to deference, as long as the agency's interpretations are reasonable. *See Moldenhauer v. Tazewell-Pekin Consol. Communications Center*, 536 F.3d 640, 643 (7th Cir. 2008) (citing *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

11

some non-speculative risk to her promotion opportunities from missing two-day's worth of call-targets, and that her FMLA leave caused the lockout, she may be able to plead an adverse action. Count V is dismissed without prejudice.

## IV. Conclusion

CEC's partial motion to dismiss, [30], is granted. Counts II, III, and V are dismissed without prejudice. Counts IV and VI are dismissed with prejudice. Gill may file an amended complaint if she successfully exhausts her state-law and sex-discrimination claims and if she can cure the defects in her FMLA retaliation claim. Any amended complaint attempting to replead the FMLA claim must be filed by October 27, 2020.[8] If no amended complaint is filed, the dismissal of the FMLA claim will convert to a dismissal with prejudice and the case will proceed on Count I only. The parties shall file a status report on November 3, 2020, with a proposal for a discovery schedule and a deadline for defendant to file an answer to the operative complaint.

ENTER:

Manish S. Shah
United States District Judge

Date: October 6, 2020

---

[8] Gill named "Colorado Technical University, a/k/a Perdoceo Education Corporation, f/k/a CEC Employee Group, LLC" as the defendant in her first amended complaint. [23]. But Gill's employer is CEC Employee Group, LLC, a separate entity that provides services to Colorado Technical University. [31] at 7, n.2. Gill does not dispute that CEC Employee Group, LLC is the correct defendant. If Gill files an amended complaint, she must correct the caption in her pleading to identify the correct defendant.

12